```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x
RANDY LINTON,

                Plaintiff,
                                                    MEMORANDUM AND ORDER
    -against-                                       Case No. 18-CV-0632 (FB)

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.
---------------------------------------------------x
```

Appearances:

*For the Plaintiff*:  
DANIEL BERGER  
NY Disability LLC  
1000 Grand Concourse  
Bronx, NY 10451

*For the Defendant*:  
ARTHUR SWERDLOFF  
United States Attorney's Office  
Eastern District of New York  
271 Cadman Plaza East  
Brooklyn, NY 11201

**BLOCK, Senior District Judge:**

Randy Linton ("Linton") seeks review of the Commissioner of Social Security's ("Commissioner") final decision denying Linton's application for Supplemental Security Income. Both Linton and the Commissioner move for judgment on the pleadings. Because the Commissioner failed to consider relevant evidence when evaluating Linton's impairments and residual functional capacity ("RFC"), both parties' motions are denied and the case is remanded for further proceedings consistent with this Memorandum and Order.

1

# I.

Linton was born in 1957, has a high school education, and previously worked as a cubical installer (between 2000 and 2013) and porter/commercial cleaner (between 2014 and 2015). On August 26, 2013, Linton applied for SSI due to sleep disorder, high blood pressure, high cholesterol, major depression, headaches, dizziness, and anemia, alleging an onset date of April 1, 2013. The Social Security Administration denied Linton's application on December 11, 2013. Linton subsequently sought and participated in a hearing before Administrative Law Judge ("ALJ") Lori Romeo. In a decision dated September 28, 2016, ALJ Romeo found that Linton was not disabled, was able to work at all exertion levels with environmental and postural limitations, and was able to perform past relevant work as a porter. That Decision became final on November 28, 2017, when the Appeals Council denied review. The ALJ developed the following evidence:

**A. Medical Evidence.**

The following healthcare providers contributed to Linton's medical record: Dr. Rosa Arancibia, a treating physician and pulmonologist; nurse practitioner Joseph DePeola; various physicians at the Brownsville Multi-Service Family Health Center ("BMS"); Dr. Johanina McCormick, a consultative psychiatrist; and Dr. Vinod Thukral, a consultative physician of internal medicine.

Dr. Arancibia diagnosed Linton with excessive daytime sleepiness, obstructive sleep apnea, and obesity. She completed a "Sleep Disorders Impairment Questionnaire," in which she notes that Linton was dependent on a CPAP machine, unable to perform daily activities or focus, had excessive daytime sleepiness, and insomnia. Treatment notes state that "spell[s]" of sleep apnea and daytime sleepiness could occur without prior warning. Dr. Arancibia opined that Linton had "serious limitations" maintaining attention for two-hour segments, performing at a consistent pace or dealing with normal work stresses, and would be required to take breaks at "unpredictable intervals" on a daily basis.

Nurse practitioner DePeola diagnosed Linton with mild depression, and treatment notes reflect that Linton complained of daytime drowsiness due to Seroquel, a medication prescribed for nighttime sleep.

Physicians at BMS diagnosed Linton with insomnia and narcolepsy. One physician, Dr. Francois, observed that Linton had daytime drowsiness and fatigue, dizziness, and a gait abnormality. Treatment notes state that Linton was only able to sit, stand, or walk cumulatively for 90 minutes during an 8-hour work day. Another BMS physician, Dr. Walker, diagnosed Linton with depression. BMS Doctors Budnah and Francois both treated Linton for "chronic daytime sleepiness" and nighttime insomnia. Dr. Budnah referred Linton to a sleep study, which diagnosed Linton with obstructive sleep apnea. Physicians at BMS prescribed

Linton various medications for his health issues, including Remeron, Procardia, and buspirone.

Dr. McCormick, a consultative physician for the Commissioner, performed a psychological examination and opined that Linton was "markedly impaired" in maintaining a regular schedule, learning new tasks, making judgments on simple work-related decisions, and that Linton's psychiatric and cognitive problems could "significantly interfere" with his ability to function on a regular basis.

Another second consultative physician for the Commissioner, Dr. Thukral, concluded, however, that Linton had no limitations sitting, standing, bending, pulling, pushing, lifting, carrying, or performing other physical activity, but noted Linton was unable to lift more than 20 pounds.

**B.    Hearing Testimony**

Linton and Edna Clark (a vocational expert) testified before the ALJ. Linton testified that his daytime fatigue was "bad" and possibly exacerbated by his medications, which Linton testified made him sleepy "all throughout the day." Linton stated that due to his daytime fatigue he was "scared [of] walking into people" or "walking in front of a car" and that he would fall asleep if he sat down. When asked how long he could concentrate before falling asleep, Linton testified that he could focus for "15, 20 minutes." Linton also testified that, while working as a porter, he was "asleep all the time" and during the "five full months" he was

employed, he missed 12 to 15 workdays due to his health issues. Linton testified that he stopped working as a porter because the job was, from the start, temporary and because his employer no longer had work for him.

Edna Clark testified that someone with Linton's impairments would be able to work as a porter/commercial cleaner. However, she also testified that the maximum a person could be off task and still remain on the job was 6 percent.

C.   **ALJ's Decision**

The ALJ rendered her decision on September 28, 2016, applying the five-step evaluation process under 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4).[1] In relevant part, ALJ Romero concluded that Linton possessed an RFC to perform a full range of work at all exertional levels with the environmental and postural limitations that Linton (1) could not operate a motor vehicle; (2) could not work at heights, near bodies of water, or with moving mechanical machinery; and (3) could not work with the public. The ALJ also concluded that Linton should be limited to

---

[1] The Commissioner must determine "(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience." *McIntyre v. Colvin*, 748 F.3d 146, 150 (2d Cir. 2014). The burden of proof is on the claimant, but shifts to the Commissioner at the fifth step. *Id.*

5

work involving simple tasks without the need to make independent work-related decisions, must have slow introduction to work-place changes, and could not work at a constant pace but could be expected to meet production goals.[2]

## II.

"In reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401 (1971); it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008). In this case, Linton argues that the final decision regarding the severity of his sleep disorders and his RFC failed to address relevant evidence contained in the record and were thus unsupported by substantial evidence. The Court agrees and remands for additional consideration of those issues.

---

[2] The ALJ also determined that Linton could perform his past work as a porter. The Court notes, however, that that vocational expert Clark testified that the maximum an employee could be "off task" and still retain a job was 6 percent, and that Linton testified that he could concentrate for 15 to 20 minutes before needing a 25-minute break (an "off task" time of 37% to 50%). Accordingly, the Court would also urge the ALJ to elaborate on its conclusion that Linton could perform his job as a porter.

## A. The Commissioner Failed to Evaluate the Severity of Linton's Sleep Disorders.

At step two of the evaluation process, the Commissioner must determine whether a claimant's health issues, alone or in combination, constitute a "severe impairment." *McIntyre*, 748 F.3d at 150. Here, the ALJ failed to make any determination whatsoever regarding the severity of Linton's sleep disorders (narcolepsy, obstructive sleep apnea, chronic daytime sleepiness, and insomnia).

This oversight is notable given the magnitude of record testimony and medical source evidence regarding Linton's sleep disorders. For instance: Linton's SSI application identifies "Sleep Disorder" as one of his primary health issues and basis for SSI benefits; Linton repeatedly testified that daytime fatigue interfered with his ability to function; multiple physicians at BMS treated Linton for chronic daytime sleepiness and diagnosed Linton with narcolepsy and insomnia; Dr. Arancibia diagnosed Linton with obstructive sleep apnea and treated him for "excessive daytime sleepiness;" and nurse practitioner DePeola reported on multiple occasions that Linton had issues falling asleep during the day.

In briefing before this Court, the Commissioner argues that the ALJ properly disregarded Linton's sleep disorders because Dr. Arancibia found that those issues were "treatable with a CPAP machine." The Court disagrees that Dr. Arancibia gave any such medical opinion: Dr. Arancibia merely stated that Linton was "dependent" on a CPAP machine, *not* that the use of a CPAP device would cure Linton's sleep

7

disorders or otherwise allow him to function normally. Moreover, Linton testified that he only used a CPAP machine during a sleep study, and there is no record evidence that Linton owns or otherwise has access to a CPAP machine.

An ALJ must "evaluate *every* medical opinion," 20 C.F.R. §§ 404.1527(c), 416.927(c) (emphasis added); it "is not proper for the ALJ to simply pick and choose . . . only such evidence that supports [their] determination, without affording consideration to evidence supporting the plaintiff's claims." *Sutherland v. Barnhart*, 322 F. Supp. 2d 282, 289 (E.D.N.Y. 2004). It is not apparent why the ALJ chose to ignore Linton's sleep disorders, but without further elaboration the Court finds the decision to deny Linton's application is not properly based on substantial evidence.

**B. The Commissioner's RFC Determination is Not Supported by Substantial Evidence.**

The ALJ concluded Linton possessed an RFC to perform a full range of work at all exertional levels. The Court finds this determination deficient in three respects.

First, the ALJ failed to consider the side-effects of Linton's medications. When evaluating a claimant's capacity for work, the ALJ is required to consider "[t]he type, dosage, effectiveness, *and side effects* of any medication [the claimant] take[s] or ha[s] taken." 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv) (emphasis added). Several of Linton's medications—including Remeron, Procardia, buspirone, and Seroquel—are known to cause drowsiness, fatigue, dizziness, and/or anxiety, yet the ALJ makes no mention of these side effects anywhere in her

8

decision.  The Commissioner argues that this oversight does not require remand because the "record does not support any limitations" specifically attributable to Linton's medications.  The Court disagrees that the medical record is silent; Linton repeatedly raised the issue with his treating physicians and in his testimony before the ALJ.  Moreover, an ALJ must "support [their] determination with positive evidence" rather than evidentiary gaps or negative inferences.  *Correale-Englehart v. Astrue*, 687 F. Supp. 2d, 396, 436 (S.D.N.Y. 2010).  Thus, for the ALJ to conclude that any adverse side-effects were non-existent or inconsequential, she is required to support that determination with evidence in the medical record.  Here, she chose to ignore the issue altogether.

Furthermore, the RCF assessment failed to account for *all* of Linton's physical impairments or their combined effect on his ability to work.  In evaluating a claimant's RFC, the ALJ must consider all impairments, including those that the ALJ found to be "nonsevere."  20 CFR 416.920(e) and 416.945.  ALJ Romero concluded that Linton suffered six "severe" impairments and six "nonsevere" impairments (including obesity), but the RFC determination makes no mention whatsoever of Linton's nonsevere impairments.  The Court is particularly troubled by the ALJ's failure to consider Linton's diagnosed obesity, as "[t]he combined effects of obesity with other impairments may be greater than might be expected

without obesity" and "[i]n cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity." SSR 02-lp.

Finally, the ALJ concluded that the consultative examiner, Dr. Thukral, "found [Linton] had no limitations," yet Dr. Thukral's medical source statement clearly notes that Linton was unable to lift more than 20 pounds—a limitation that would preclude any work above the "light" exertion level.[3]

The Court recognizes that an ALJ "need not address every shred of evidence in the administrative record," *Wright v. Berryhill*, No. 3:17-cv-00501, 2018 WL 3993442, at *5 (D. Conn. Aug. 21, 2018), but she may not ignore "relevant and probative evidence which is available," *Lopez v. Sec'y of Dep't of Health & Human Servs.*, 728 F.2d 148, 150–51 (2d Cir. 1984). Here, the ALJ repeatedly ignored evidence that, if considered, could be outcome-determinative. Without elaboration on those issues, the RFC finding is not properly based on substantial evidence.[4]

---

[3] Light work requires the ability to lift or carry 20 pounds. Medium work requires frequent lifting or carrying of 25 pounds and lifting no more than 50 pounds. *See* SSR 83-10.

[4] If the ALJ is unsatisfied with the record or believes there are evidentiary gaps, it is her duty to develop it further. *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2010) ("The ALJ has an obligation to develop the record in light of the non-adversarial nature of the benefits proceedings.").

## III.

For the foregoing reasons, both motions for judgment on the pleadings are denied, and the case is remanded for further proceedings consistent with this Memorandum and Order.

**SO ORDERED**.

/S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
October 28, 2019